# EXHIBIT A

James A. Francis
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
E: jfrancis@consumerlawfirm.com

Attorneys for Plaintiff and the Class

| | |
|---|---|
| IKEA ROGERS, on behalf of herself and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY – LAW DIVISION |
| *Plaintiff*, | GLOUCESTER COUNTY |
| v. | DOCKET NO. _____ |
| NATIONAL TENANT NETWORK, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | **CLASS ACTION** |

## COMPLAINT – CLASS ACTION

On behalf of herself and all others similarly situated, Plaintiff Ikea Rogers ("Plaintiff" or "Ms. Rogers"), by and through her attorneys, respectfully alleges as follows:

## NATURE OF THE ACTION

1.     This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*. ("NJCFA"), by Plaintiff, seeking relief for Defendant's widespread violations thereof for herself and all others similarly situated.

2.     Despite the public availability of court records that conclusively demonstrate that certain eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, misleading, and inaccurate tenant screening reports to landlords in violation of FCRA section 1681e(b).

3.     Similarly, although the final disposition (or lack of a disposition) of a criminal charge is available on the regularly-updated public court record of criminal proceedings, Defendant routinely fails to consult such records and thus publishes harmful, misleading, and inaccurate criminal record information on reports, even where the criminal charge did not result in a conviction and predates the report by more than seven years, in violation of FCRA section 1681c(a)(5).

4.     Defendant compounds this misreporting by failing to provide consumers with a clear and accurate disclosure of all information on file about them, including the original and any intermediate sources of such information, upon such consumers' request as required by FCRA section 1681g(a)(2).  Instead, Defendant fails to identify the court(s) from which such records originate, and to identify any intermediate private vendor sources of information which may be the source of inaccuracies on the report.  Defendant's failure to provide complete disclosures impairs consumers' rights under the FCRA to dispute such information and have it corrected at the source to prevent future misreporting.

5.     Defendant's unlawful conduct as described above constitutes a violation of the NJCFA and furthermore represent unconscionable commercial practices prohibited under N.J. Stat. § 56:8-2.

6.     Defendant's practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate and/or irrelevant adverse information.

## I.     JURISDICTION *and* VENUE

7.     This Court has jurisdiction over this matter because Defendant regularly conducts business in the State of New Jersey.  National Tenant Network, Inc. ("NTN") is a consumer reporting agency which regularly conducts business in the District of New Jersey and has a principal office located at 188 Fries Mill Road, Turnersville, NJ 08012, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired,

substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

8.      Defendant National Tenant Network promotes that visitors to its web site may contact its "Philadelphia" location at PO Box 1023, Turnersville, NJ 08012.  *See* https://ntnonline.com/location/philadelphia/ (last accessed June 14, 2024).

## II.      PARTIES

9.      Plaintiff Ikea Rogers ("Plaintiff" or "Ms. Rogers") is an adult individual who resides in Philadelphia, Pennsylvania.  At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.     Defendant National Tenant Network, Inc. ("Defendant" or "NTN") regularly conducts business in the State of New Jersey.

11.     At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

## III.     FACTUAL ALLEGATIONS

12.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

13.     Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom its reports relate. 15 U.S.C. § 1681e(b).

14.     Defendant is required by the FCRA to follow procedures to assure that certain types of information, including records of criminal charges that did not resulting in a conviction that

predate the report by more than seven years, are not included on any consumer report. 15 U.S.C. § 1681c(a)(5).

15.     Defendant is also subject to the New Jersey Consumer Fraud Act, which prohibits "the act, use or employment by any person of any commercial practice that is unconscionable, or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2.

16.     For many years, Defendant has purchased public records information pertaining to residential eviction litigation ("eviction information") from third-party vendors instead of retrieving the actual underlying court records themselves — or even more manageable digital representations — for the purpose of creating and selling consumer reports to third party landlords and rental property managers.

17.     The eviction information Defendant purchases is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

18.     Defendant knows that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for consumer reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

19.     Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of the "Big Three" CRAs, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., and dozens of FCRA lawsuits throughout the United States, including in this District.

20.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

21.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

22.     Other regulators, including the New York Attorney General, initiated investigations of the Big Three in part due to similar problems with the accuracy and currency of public record information in credit reports.

23.     The Big Three ultimately entered into an agreement[3] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

---

[1]     CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed June 14, 2024).

[2]     *Id*. at 2.1.2.

[3]     *Settlement Agreement*, In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax

24.     As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the Big Three ceased including in credit reports civil judgment information that did not meet certain minimum standards.  In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[4]

25.     Although the Big Three stepped back from using public records information in some of their consumer reporting products, other CRAs, like Defendant, continue to do so.

26.     Furthermore, the CFPB has issued an advisory opinion making clear that consumer reporting agencies must identify "both the original source and any intermediary or vendor source (or sources) that provide the item of information from the original source to the consumer reporting agency" in its disclosures to consumers.[5]

27.     At all times relevant to these allegations, Defendant was aware of the investigations of the CFPB and state attorneys general into the Big Three's public records practices, the NCAP, the various public records class actions pending throughout the United States, the guidance of the CFPB, and Defendant's obligations under the FCRA and the NJCFA.

28.     Nevertheless, Defendant, fully aware of the problems associated with the incomplete and inaccurate public records information purchased from vendors of such information, continues to report incomplete information regarding eviction and criminal proceedings that is incomplete and/or out of date according to the FCRA to potential landlords.

---

Information Services, LLC; and TransUnion, LLC, https://nylawyer.nylj.com/adgifs/decisions15/031015settlement.pdf (last viewed June 14, 2024).

[4]     *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed June 14, 2024).

[5]     *See* CFPB, Advisory Opinion on Fair Credit Reporting; File Disclosures, 89 Fed. Reg. 4167 (Jan. 23, 2024)  *available at* https://www.govinfo.gov/content/pkg/FR-2024-01-23/pdf/2024-00786.pdf

29.     The data and reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer.  Thus, the reports that Defendant sells about thousands of consumers each year are "consumer reports."  *See* 15 U.S.C. § 1681a(d).

30.     Based upon a common policy and practice, Defendant regularly reports inaccurate and out-of-date eviction information pertaining to cases and judgments that have been dismissed, withdrawn, vacated, satisfied, or have resulted in a judgment for the tenant.

31.     Based upon a common policy and practice, Defendant regularly reports records of criminal proceedings that did not result in any conviction and which predates the report by more than seven years.

32.     Upon information and belief, Defendant obtains public record information, including eviction and criminal record information, from private third party vendor sources rather than directly from courthouses.

33.     Based upon a common policy and practice, Defendant regularly fails to identify all of its original and/or intermediate vendor source(s) of public record information in file disclosures provided to consumers upon request, including but not limited to identifying the jurisdiction from which court records were obtained, and any private vendors sources from which court records were obtained.

34.     Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce.  Consumers who have obtained the dismissal or withdrawal of an eviction matter, settled an eviction complaint, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing.

35.    Defendant's practices also violate the FCRA as a matter of law and exact serious consequences on rental housing applicants and interstate commerce when Defendant reports criminal record information that did not result in a conviction after the seven years permitted under the FCRA.  Consumers subject to such information on their reports are likewise prejudiced in their ability to obtain leased housing.

36.    Defendant's practices with respect to non-disclosure of all original and/or intermediate vendor sources of public record information harm consumers by denying them statutorily-mandated information, and preventing them from vindicating their FCRA rights to dispute and have information corrected, including at the underlying source, to prevent future misreporting.

37.    Defendant's practices as described above are uniform and not unique to each consumer or transaction.

38.    Defendant's practices of reporting of inaccurate and/or outdated eviction and criminal record information and of failing to disclose all of its original and intermediate sources of information is not accidental, but instead are the result of deliberately designed policies and procedures.

39.    At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

*Plaintiff's Experience*

40.    At all times relevant to Plaintiff's allegations, information pertaining to Landlord Tenant Complaints filed in the Philadelphia Municipal Court, including full case dockets and digital representations of all documents filed in such cases, including, but not limited to, complaints,

judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online for free from the Philadelphia Municipal Court Electronic Filing System.

    41.    On or about December 4, 2023, Plaintiff applied to rent a home at 5166 Funston Street, in Philadelphia, from EGE Management, LLC (hereafter, "EGE").

    42.    In conjunction with her application, Defendant prepared an "NTN DecisionPoint Instant Resident Selection System" report (the "IRSS Report") about Plaintiff for a fee, and delivered the report to EGE on or about January 4, 2024.

    43.    The January 4, 2024 IRSS Report contained inaccurate public record information Defendant obtained pursuant to its standardized procedures.

    44.    First, the report included a public record of an eviction filing, as follows:

| Public Records see NTN Tenant Performance Profile | | |
|---|---|---|
| Action | Date of Filing | Disposition |
| Rogers, Ikea (1614 Brill) | 08-Sep-2023 | 1969.22+ |

    45.    In reality, the disposition of the case as of September 29, 2023 was a $0 Judgment by Agreement which provided for the judgment to be vacated, and the complaint was ultimately Withdrawn without Prejudice. Documents reflecting these updates were filed on the publicly-available case docket contemporaneously with their entry.

    46.    Defendant's reporting of the "Disposition" of the case as the amount sought in the filing is inaccurate and misleading, suggesting that a judgment had been entered in that amount.

    47.    Defendant had failed to update the status of the case to reflect the September 29, 2023 filing for more than three months.

    48.    Therefore, the IRSS Report contained no reference to the Judgment by Agreement nor any resolution of the matter from case LT-23-09-08-3555.

49.     The IRSS Report included a header labeled "Multistate Criminal / Other Public Records Search."

50.     Defendant, pursuant to its standardized procedures, failed to exclude from the report criminal records that did not result in a conviction and which pre-dated the report by seven or more years.

51.     Defendant included the following criminal record information on its January 2024 report concerning Ms. Rogers:

| IKEA ROGERS | COUNT 1. THEFT OF SERVICES-ACQUIS OF SERVICE | |
|---|---|---|
| D.O.B.: **02/10/1990** | File Date | 03/17/2015 |
| Gender/ Race:  **Female / Black** | Offense Date | 03/12/2015 |
| Address: | Statute | 3926(A1) |
| **Philadelphia, PA 19122** | Docket Number | MJ-32133-NT-0000338-2015 |
| Offense County:**Delaware** | Docket Type | Non-Traffic |
| Source: | Case Type | Non-Traffic |
| **Pennsylvania Admin Office of Courts (Non Traffic Filing)** | Court Name | MDJ-32-1-33 |
| Match Type: | | |
| **Exact Name And DOB Match** | | |

52.     Although the criminal record was dated March 2015, almost nine years prior to the date of the January 2024 report, and does not include any record of a conviction, Defendant nonetheless included it on the report.

53.     As a result of Defendant's inaccurate and defamatory reporting, EGE denied Plaintiff's application, and Plaintiff experienced harms including harm to her reputation and emotional distress.

54.     Plaintiff made a request for information to Defendant on or about April 3, 2024.

55.     Defendant treated Plaintiff's April 3, 2024 communication as a file disclosure request, and sent her a response dated April 22, 2024 purporting to be a full file disclosure.

56.     Defendant's April 22, 2024 communication referenced the September 2023 eviction filing, but did not identify the source(s) from which Defendant obtained any records regarding the

filing, including but not limited to the court in which the eviction record was filed, or any intermediate vendor source(s).

57.     Without identification of all direct and indirect sources of information, Plaintiff's ability to confirm that the record is complete and correct at the source(s), and to otherwise vindicate her rights under the FCRA, is impaired.

58.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under sections 1681c(a)(2), 1681e(b) and 1681g(a)(2) of the FCRA, and further assumed an unjustifiably high risk of harm.

59.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under the New Jersey Consumer Fraud Act, including "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2.

## IV.    <u>CLASS ACTION ALLEGATIONS</u>

60.     Plaintiff brings this action on behalf of the following Classes for Defendant's violations of the FCRA and NJCFA:

**a.** *Inaccurate Eviction Records Class*

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendant and delivered to any third party that contained eviction information, but which failed to state that the action had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

**b.** *Outdated Criminal Record Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendant and delivered to any third party that contained information pertaining to a criminal record for which there was no conviction reported, and that criminal record was dated more than seven (7) years prior to the date of the report.

**c.** *Failure to Disclose Source(s) Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories to whom Defendant sent a communication in response to that consumer's request for information which did not identify both the original and any intermediate vendor source(s) from which Defendant obtained the public record information referenced in the communication.

61.    The members of the Classes are so numerous that joinder of all members is impracticable.  Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the thousands.  Defendant sells eviction information to thousands of landlords and rental property agents throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.  Furthermore, upon information and belief, Defendant prepares and sends disclosures to consumers using standardized policies and procedures.

62.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  The principal question is whether Defendant violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendant violated the FCRA by reporting

criminal information that is barred by 15 U.S.C. § 1681c(a) on a consumer report, whether Defendant failed to provide all of the information it maintains about consumers upon request; whether Defendant violated the FCRA by failing to disclose both the original and intermediate vendor source(s) of public record information referenced in the disclosure; and whether Defendant's actions were unconscionable commercial practices or otherwise unlawful under the NJCFA.

63.     Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

65.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

66.     Whether Defendant violated the FCRA and/or NJCFA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction and criminal litigation records.

67.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate

claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## V.   CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

68.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Inaccurate Eviction Records Class for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, Defendant failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Inaccurate Eviction Records Class, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### COUNT II – VIOLATION *of* FCRA SECTION 1681c(a)(5)

70.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

71.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Outdated Criminal Record Class for negligently and willfully including information barred by 15 U.S.C. § 1681c(a)(5) on tenant screening reports that it sells. Specifically, Defendant includes criminal record information that pre-dates the report by seven or more years on

reports even where no disposition is reported, thereby publishing barred information to their potential landlords and property managers.

### COUNT III – VIOLATION *of* FCRA SECTION 1681g(a)(2)

72. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

73. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Failure to Disclose Source(s) Class for negligently and willfully failing to identify all original and intermediate source(s) from which Defendant obtained the public record information referenced in the response to the consumer's request, including but not limited to the originating court and any private vendor source(s).

### COUNT IV – DEFAMATION

74. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

75. In communication to EGE and/or its other customers that the disposition of an eviction filing resulted in a disposition of "1969.22+" Defendant expressly communicated a factual statement about Plaintiff indicating that a judgment of $1,969.22 had been entered against her in the eviction case referenced.

76. Defendant intentionally communicated this statement about Plaintiff to EGE.

77. This communication was false, as shown by the publicly available record of the eviction filing.

78. Defendant made this defamatory statement with actual malice – *i.e.*, with a reckless disregard for its falsity.

79. Defendant made this statement without privilege or justification.

80.     This statement directly injured Plaintiff by harming her reputation and directly causing her to be denied a rental opportunity.

81.     It was Defendant's expectation and intent that EGE would rely on its representation regarding the amount of the disposition as represented on its customer report.

82.     As a result of Defendant's false and defamatory statement, Plaintiff suffered damages including but not limited to harm to reputation, loss of rental opportunity, time spent to resolve the problem, payment of additional rental application fee(s), and/or emotional distress.

### COUNT V – VIOLATION *of* NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. §§ 56:8-1 *et seq.*)

83.     Plaintiff incorporates the above allegations by reference.

84.     Defendant's practices as described above in publishing inaccurate and outdated eviction information to potential landlords and property managers constitutes unlawful conduct, as it is a violation of the FCRA, as alleged in Counts I – III.

85.     Defendant's actions caused Plaintiff's damages, including but not limited to harm to reputation, loss of rental opportunity, time spent to resolve the problem, payment of additional rental application fee(s), and/or emotional distress.

### VI.     PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

A.     An order certifying the case as a class action on behalf of the proposed Classes under New Jersey Rule of Civil Procedure 4:23-1 and appointing Plaintiff and the undersigned counsel to represent the Classes;

B.     An order declaring that Defendant's actions as described above are in violation of the FCRA;

C.      An order declaring that Defendant's actions as described above are in violation of the NJCFA;

D.      An order awarding actual damages pursuant to 15 U.S.C. § 1681o(a) and pursuant to the NJCFA;

E.      An order awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

F.      An order awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

G.      An order awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

H.      An award of pre-judgment and post-judgment interest as provided by law;

I.      An award of attorneys' fees and costs; and

J.      An order granting such other and further relief as may be just and proper.

## VII.   JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff Ikea Rogers hereby designates James A. Francis, John Soumilas, Lauren KW Brennan, and Shamus Brennan as trial counsel.

## CERTIFICATION

JAMES A. FRANCIS, of full age, hereby certifies:

1.      In accordance with Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or a pending arbitration proceeding.

2.      No other action or arbitration proceeding is contemplated.

3.      No other parties are known who should be joined in this action.

4.      This pleading has been filed within the time prescribed by R. 4:9-1.

5.      The foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 14, 2024

Respectfully submitted,

IKEA ROGERS*, on behalf of herself and all others similarly situated.*

By:      */s/ James A. Francis*
James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Shamus Brennan
LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
T: (215) 587-9377
F: (215) 587-9902
brennan@lawprojectpa.org

*Attorneys for Plaintiff*

# Civil Case Information Statement

## Case Details: GLOUCESTER | Civil Part Docket# L-000765-24

**Case Caption:** ROGERS IKEA  VS NATIONAL TENANT NETW ORK, INC.

**Case Initiation Date:** 06/14/2024

**Attorney Name:** JAMES ARTHUR FRANCIS

**Firm Name:** FRANCIS & MAILMAN, PC

**Address:** 1600 MARKET ST STE 2510
PHILADELPHIA PA 19103

**Phone:** 2157350800

**Name of Party:** PLAINTIFF : Rogers, Ikea, M

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** OTHER Violation Fair Credit Report Act and NJ Cons Fraud Act

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Ikea M Rogers? NO**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
Complex civil action invoking multiple class action claims under the federal Fair Credit Reporting Act and the New Jersey Consumer Fraud Act.

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/14/2024
Dated

/s/ JAMES ARTHUR FRANCIS
Signed

```
GLOUCESTER COUNTY COURTHOUSE
GLOUCESTER COUNTY CIVIL DIVISION
1 NORTH BROAD ST
WOODBURY          NJ 08096
                                TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (856) 878-5050
COURT HOURS  8:30 AM - 4:30 PM


                        DATE:   JUNE 14, 2024
                        RE:     ROGERS IKEA  VS NATIONAL TENANT NETW ORK, INC.
                        DOCKET: GLO L -000765 24


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

     DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON TIMOTHY W. CHELL

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     102
AT:  (856) 878-5050 EXT 15255.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                              ATT: JAMES A. FRANCIS
                              FRANCIS & MAILMAN, PC
                              1600 MARKET ST
                              STE 2510
                              PHILADELPHIA      PA 19103


ECOURTS
```

James A. Francis
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
E: jfrancis@consumerlawfirm.com

Attorneys for Plaintiff and the Class

| | |
|---|---|
| IKEA ROGERS, on behalf of herself and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY – LAW DIVISION |
| *Plaintiff*, | GLOUCESTER COUNTY |
| v. | DOCKET NO.  GLO-L-000765-24 |
| NATIONAL TENANT NETWORK, INC. and LCIJ, INC. *d/b/a* National Tenant Network, | **JURY TRIAL DEMANDED** |
| *Defendants*. | **CLASS ACTION** |

## <u>AMENDED COMPLAINT – CLASS ACTION</u>

On behalf of herself and all others similarly situated, Plaintiff Ikea Rogers ("Plaintiff" or "Ms. Rogers"), by and through her attorneys, respectfully alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*. ("NJCFA"), by Plaintiff, seeking relief for Defendants' widespread violations thereof for herself and all others similarly situated.

2.      Despite the public availability of court records that conclusively demonstrate that certain eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendants routinely fail to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, misleading, and inaccurate tenant screening reports to

landlords in violation of FCRA section 1681e(b).

3.      Similarly, although the final disposition (or lack of a disposition) of a criminal charge is available on the regularly-updated public court record of criminal proceedings, Defendants routinely fail to consult such records and thus publishes harmful, misleading, and inaccurate criminal record information on reports, even where the criminal charge did not result in a conviction and predates the report by more than seven years, in violation of FCRA section 1681c(a)(5).

4.      Defendants compound this misreporting by failing to provide consumers with a clear and accurate disclosure of all information on file about them, including the original and any intermediate sources of such information, upon such consumers' request as required by FCRA section 1681g(a)(2).  Instead, Defendants fail to identify the court(s) from which such records originate, and to identify any intermediate private vendor sources of information which may be the source of inaccuracies on the report.  Defendants' failure to provide complete disclosures impairs consumers' rights under the FCRA to dispute such information and have it corrected at the source to prevent future misreporting.

5.      Defendants' unlawful conduct as described above constitutes a violation of the NJCFA and furthermore represents unconscionable commercial practices prohibited under N.J. Stat. § 56:8-2.

6.      Defendants' practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate and/or irrelevant adverse information.

## I.      JURISDICTION *and* VENUE

7.      This Court has jurisdiction over this matter because Defendants regularly conduct business in the State of New Jersey.

8.      National Tenant Network, Inc. is a consumer reporting agency which regularly conducts business in the State of New Jersey and has a principal office located at PO Box 1664, Lake Oswego, OR. 97035.

9.      LCIJ, Inc. d/b/a National Tenant Network is a consumer reporting agency which regularly conducts business in the State of New Jersey and has a principal office located at 188 Fries Mill Road Suite L2, Turnersville, NJ 08012.

## II.      <u>PARTIES</u>

10.      Plaintiff Ikea Rogers ("Plaintiff" or "Ms. Rogers") is an adult individual who resides in Philadelphia, Pennsylvania.  At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11.      Defendant National Tenant Network, Inc. ("NTN") regularly conducts business in the State of New Jersey.

12.      Defendant LCIJ, Inc d/b/a National Tenant Network ("LCIJ") regularly conducts business in the State of New Jersey.

13.      Defendants NTN Inc. and LCIJ (together, "Defendants" or "NTN") operate under the same business name (NTN) and work in concert as a single, unified consumer reporting agency to prepare consumer reports and respond to consumer requests for information and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

14.      At all times pertinent hereto, Defendants were each "persons" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

### III.   FACTUAL ALLEGATIONS

15.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

16.     Defendants are required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom its reports relate. 15 U.S.C. § 1681e(b).

17.     Defendants are required by the FCRA to follow procedures to assure that certain types of information, including records of criminal charges that did not resulting in a conviction that predate the report by more than seven years, are not included on any consumer report.  15 U.S.C. § 1681c(a)(5).

18.     Defendants are each also subject to the New Jersey Consumer Fraud Act, which prohibits "the act, use or employment by any person of any commercial practice that is unconscionable, or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate."  N.J.S.A. 56:8-2.

19.     For many years, Defendants have purchased public records information pertaining to residential eviction litigation ("eviction information") from third-party vendors instead of retrieving the actual underlying court records themselves — or even more manageable digital representations — for the purpose of creating and selling consumer reports to third party landlords and rental property managers.

20.     The eviction information Defendants purchase is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

21.     Defendants know that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for consumer reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

22.     Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of the "Big Three" CRAs, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., and dozens of FCRA lawsuits throughout the United States.

23.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

24.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to

---

[1]     CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed June 14, 2024).

test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

25.    Other regulators, including the New York Attorney General, initiated investigations of the Big Three in part due to similar problems with the accuracy and currency of public record information in credit reports.

26.    The Big Three ultimately entered into an agreement[3] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

27.    As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the Big Three ceased including in credit reports civil judgment information that did not meet certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[4]

28.    Although the Big Three stepped back from using public records information in some of their consumer reporting products, other CRAs, like NTN, continue to do so.

29.    Furthermore, the CFPB has issued an advisory opinion making clear that consumer reporting agencies must identify "both the original source and any intermediary or vendor source

---

[2]    *Id.* at 2.1.2.

[3]    *Settlement Agreement*, In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC, https://nylawyer.nylj.com/adgifs/decisions15/031015settlement.pdf (last viewed June 14, 2024).

[4]    *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed June 14, 2024).

(or sources) that provide the item of information from the original source to the consumer reporting agency" in its disclosures to consumers.[5]

30.     At all times relevant to these allegations, Defendants were aware of the investigations of the CFPB and state attorneys general into the Big Three's public records practices, the NCAP, the various public records class actions pending throughout the United States, the guidance of the CFPB, and Defendants' obligations under the FCRA and the NJCFA.

31.     Nevertheless, Defendants, fully aware of the problems associated with the incomplete and inaccurate public records information purchased from vendors of such information, continue to report incomplete information regarding eviction and criminal proceedings that is incomplete and/or out of date according to the FCRA to potential landlords.

32.     The data and reports Defendants sell are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer.  Thus, the reports that Defendants sell about thousands of consumers each year are "consumer reports."  *See* 15 U.S.C. § 1681a(d).

33.     Based upon a common policy and practice, Defendants regularly report inaccurate and out-of-date eviction information pertaining to cases and judgments that have been dismissed, withdrawn, vacated, satisfied, or have resulted in a judgment for the tenant.

34.     Based upon a common policy and practice, Defendants regularly report records of criminal proceedings that did not result in any conviction, and which predates the report by more than seven years.

---

[5]     *See* CFPB, Advisory Opinion on Fair Credit Reporting; File Disclosures, 89 Fed. Reg. 4167 (Jan. 23, 2024) *available at* https://www.govinfo.gov/content/pkg/FR-2024-01-23/pdf/2024-00786.pdf

35.     Upon information and belief, Defendants obtain public record information, including eviction and criminal record information, from private third party vendor sources rather than directly from courthouses.

36.     Based upon a common policy and practice, Defendants regularly fail to identify all of its original and/or intermediate vendor source(s) of public record information in file disclosures provided to consumers upon request, including but not limited to identifying the jurisdiction from which court records were obtained, and any private vendors sources from which court records were obtained.

37.     Defendants' practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce.  Consumers who have obtained the dismissal or withdrawal of an eviction matter, settled an eviction complaint, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing.

38.     Defendants' practices also violate the FCRA as a matter of law and exact serious consequences on rental housing applicants and interstate commerce when Defendants report criminal record information that did not result in a conviction after the seven years permitted under the FCRA.  Consumers who are the subject of reports containing such information are likewise prejudiced in their ability to obtain leased housing.

39.     Defendants' practices with respect to non-disclosure of all original and/or intermediate vendor sources of public record information harm consumers by denying them statutorily-mandated information, and preventing them from vindicating their FCRA rights to dispute and have information corrected, including at the underlying source, to prevent future misreporting.

40.     Defendants' practices as described above are uniform and not unique to each consumer or transaction.

41.     Defendants' practices of reporting of inaccurate and/or outdated eviction and criminal record information and of failing to disclose all of its original and intermediate sources of information is not accidental, but instead are the result of deliberately designed policies and procedures.

42.     At all relevant times, Defendants' conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendants, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

*Plaintiff's Experience*

43.     At all times relevant to Plaintiff's allegations, information pertaining to Landlord Tenant Complaints filed in the Philadelphia Municipal Court, including full case dockets and digital representations of all documents filed in such cases, including, but not limited to, complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online for free from the Philadelphia Municipal Court Electronic Filing System.

44.     On or about December 4, 2023, Plaintiff applied to rent a home at 5166 Funston Street, in Philadelphia, from EGE Management, LLC (hereafter, "EGE").

45.     In conjunction with her application, Defendants worked in concert to prepare a "NTN DecisionPoint Instant Resident Selection System" report (the "IRSS Report") about Plaintiff for a fee, and delivered the report to EGE on or about January 4, 2024.

46.     The January 4, 2024 IRSS Report contained inaccurate public record information Defendants obtained pursuant to its standardized procedures.

47.     First, the report included a public record of an eviction filing, as follows:

**Public Records** see NTN Tenant Performance Profile

| Action | Date of Filing | Disposition |
|--------|----------------|-------------|
| Rogers, Ikea (1614 Brill) | 08-Sep-2023 | 1969.22+ |

48.     In reality, the disposition of the case as of September 29, 2023 was a $0 Judgment by Agreement which provided for the judgment to be vacated, and the complaint was ultimately Withdrawn without Prejudice. Documents reflecting these updates were filed on the publicly-available case docket contemporaneously with their entry.

49.     Defendants' reporting of the "Disposition" of the case as the amount sought in the filing is inaccurate and misleading, suggesting that a judgment had been entered in that amount.

50.     Defendants had failed to update the status of the case to reflect the September 29, 2023 filing for more than three months.

51.     Therefore, the IRSS Report contained no reference to the Judgment by Agreement nor any resolution of the matter from case LT-23-09-08-3555.

52.     The IRSS Report included a header labeled "Multistate Criminal / Other Public Records Search."

53.     NTN, pursuant to its standardized procedures, failed to exclude from the report criminal records that did not result in a conviction and which pre-dated the report by seven or more years.

54.     NTN included the following criminal record information on its January 2024 report concerning Ms. Rogers:

| IKEA ROGERS | COUNT 1. THEFT OF SERVICES-ACQUIS OF SERVICE | |
|---|---|---|
| D.O.B.: **02/10/1990** | File Date | 03/17/2015 |
| Gender/ Race:  **Female / Black** | Offense Date | 03/12/2015 |
| Address: | Statute | 3926(A1) |
| **Philadelphia, PA 19122** | Docket Number | MJ-32133-NT-0000338-2015 |
| Offense County:**Delaware** | Docket Type | Non-Traffic |
| Source: | Case Type | Non-Traffic |
| **Pennsylvania Admin Office of Courts (Non Traffic Filing)** | Court Name | MDJ-32-1-33 |
| Match Type: | | |
| **Exact Name And DOB Match** | | |

55.     Although the criminal record was dated March 2015, almost nine years prior to the date of the January 2024 report, and does not include any record of a conviction, NTN nonetheless included it on the report.

56.     As a result of NTN inaccurate and defamatory reporting, EGE denied Plaintiff's application, and Plaintiff experienced harms including harm to her reputation and emotional distress.

57.     Plaintiff made a request for information to NTN on or about April 3, 2024.

58.     NTN treated Plaintiff's April 3, 2024 communication as a file disclosure request, and sent her a response dated April 22, 2024 purporting to be a full file disclosure.

59.     NTN's April 22, 2024 communication referenced the September 2023 eviction filing, but did not identify the source(s) from which Defendants obtained any records regarding the filing, including but not limited to the court in which the eviction record was filed, or any intermediate vendor source(s).

60.     Without identification of all direct and indirect sources of information, Plaintiff's ability to confirm that the record is complete and correct at the source(s), and to otherwise vindicate her rights under the FCRA, is impaired.

61.     At all times pertinent hereto, Defendants' conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as

set forth under sections 1681c(a)(2), 1681e(b) and 1681g(a)(2) of the FCRA, and further assumed an unjustifiably high risk of harm.

62.     At all times pertinent hereto, Defendants' conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under the Fair Credit Reporting Act, and the New Jersey Consumer Fraud Act, including "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2.

## IV.   CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action on behalf of the following Classes for Defendants' violations of the FCRA and NJCFA:

**a. *Inaccurate Eviction Records Class***

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendants and delivered to any third party that contained eviction information, but which failed to state that the action had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

**b. *Outdated Criminal Record Class***

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendants and delivered to any third party that contained information pertaining to a criminal record for which there was no conviction reported, and that criminal record was dated more than seven (7) years prior to the date of the report.

**c. *Failure to Disclose Source(s) Class***

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural

persons with an address in the United States and its Territories to whom Defendants sent a communication in response to that consumer's request for information which did not identify both the original and any intermediate vendor source(s) from which Defendants obtained the public record information referenced in the communication.

64.     The members of the Classes are so numerous that joinder of all members is impracticable.  Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the members of the Classes number in the thousands.  Defendants sell eviction information to thousands of landlords and rental property agents throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendants prepare and send disclosures to consumers using standardized policies and procedures.

65.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  The principal question is whether Defendants violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendants violated the FCRA by reporting criminal information that is barred by 15 U.S.C. § 1681c(a) on a consumer report, whether Defendants failed to provide all of the information it maintains about consumers upon request; whether Defendants violated the FCRA by failing to disclose both the original and intermediate vendor source(s) of public record information referenced in the disclosure; and whether Defendants' actions were unconscionable commercial practices or otherwise unlawful under the NJCFA.

66.    Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

67.    Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions.  Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

68.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

69.    Whether Defendants violated the FCRA and/or NJCFA can be determined by examination of Defendants' policies and conduct and a ministerial inspection of Defendants' business records and publicly available eviction and criminal litigation records.

70.    A class action is a superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA.  Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims.  The identities of the members of the Classes may be derived from Defendants' records.

## V.     CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

71.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

72.     Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable to the Plaintiff and the Inaccurate Eviction Records Class for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).  Specifically, Defendants failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Inaccurate Eviction Records Class, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### COUNT II – VIOLATION *of* FCRA SECTION 1681c(a)(5)

73.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74.     Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable to the Plaintiff and the Outdated Criminal Record Class for negligently and willfully including information barred by 15 U.S.C. § 1681c(a)(5) on tenant screening reports that it sells.  Specifically, Defendants include criminal record information that pre-dates the report by seven or more years on reports even where no disposition is reported, thereby publishing barred information to their potential landlords and property managers.

### COUNT III – VIOLATION *of* FCRA SECTION 1681g(a)(2)

75.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

76.     Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable to the

Plaintiff and the Failure to Disclose Source(s) Class for negligently and willfully failing to identify

all original and intermediate source(s) from which Defendants obtained the public record

information referenced in the response to the consumer's request, including but not limited to the

originating court and any private vendor source(s).

### COUNT IV – DEFAMATION

77.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at

length herein.

78.     In communication to EGE and/or its other customers that the disposition of an

eviction filing resulted in a disposition of "1969.22+" Defendants expressly communicated a factual

statement about Plaintiff indicating that a judgment of $1,969.22 had been entered against her in the

eviction case referenced.

79.     Defendants intentionally communicated this statement about Plaintiff to EGE.

80.     This communication was false, as shown by the publicly available record of the

eviction filing.

81.     Defendants made this defamatory statement with actual malice – *i.e.*, with a reckless

disregard for its falsity.

82.     Defendants made this statement without privilege or justification.

83.     This statement directly injured Plaintiff by harming her reputation and directly

causing her to be denied a rental opportunity.

84.     It was Defendants' expectations and intent that EGE would rely on its representation

regarding the amount of the disposition as represented on its customer report.

85.     As a result of Defendants' false and defamatory statement, Plaintiff suffered

damages including but not limited to harm to reputation, loss of rental opportunity, time spent to

resolve the problem, payment of additional rental application fee(s), and/or emotional distress.

### COUNT V – VIOLATION *of* NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. §§ 56:8-1 *et seq.*)

86.    Plaintiff incorporates the above allegations by reference.

87.    Defendants' practices as described above in publishing inaccurate and outdated eviction information to potential landlords and property managers constitutes unlawful conduct, as it is a violation of the FCRA, as alleged in Counts I – III.

88.    Defendants' actions caused Plaintiff's damages, including but not limited to harm to reputation, loss of rental opportunity, time spent to resolve the problem, payment of additional rental application fee(s), and/or emotional distress.

### VI.    PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enters an order granting the following relief:

A.    An order certifying the case as a class action on behalf of the proposed Classes under New Jersey Rule of Civil Procedure 4:23-1 and appointing Plaintiff and the undersigned counsel to represent the Classes;

B.    An order declaring that Defendants actions as described above are in violation of the FCRA;

C.    An order declaring that Defendants actions as described above are in violation of the NJCFA;

D.    An order awarding actual damages pursuant to 15 U.S.C. § 1681o(a) and pursuant to the NJCFA;

E.    An order awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

F.      An order awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

G.      An order awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

H.      An award of pre-judgment and post-judgment interest as provided by law;

I.      An award of attorneys' fees and costs; and

J.      An order granting such other and further relief as may be just and proper.

## VII.   JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff Ikea Rogers hereby designates James A. Francis, John Soumilas, Lauren KW Brennan, and Shamus Brennan as trial counsel.

## CERTIFICATION

JAMES A. FRANCIS, of full age, hereby certifies:

1.      In accordance with Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or a pending arbitration proceeding.

2.      No other action or arbitration proceeding is contemplated.

3.      No other parties are known who should be joined in this action.

4.      This pleading has been filed within the time prescribed by R. 4:9-1.

5.      The foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: December 5, 2024

Respectfully submitted,

IKEA ROGERS*, on behalf of herself and all others similarly situated.*

By:    */s/ James A. Francis*
James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Shamus Brennan
LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
T: (215) 587-9377
F: (215) 587-9902
brennan@lawprojectpa.org

*Attorneys for Plaintiff*

IKEA ROGERS        Plaintiff

vs.

NATIONAL TENANT NETWORK, INC. and LCIJ, INC    Defendant
d/b/a NATIONAL TENANT NETWORK, INC

Superior Court of New Jersey
Venue:   SUPERIOR COURT OF NEW JERSEY
           GLOUCESTER COUNTY LAW DIVISION
Docket Number:   GLO-L-000765-24

**Person to be Served** (Name & Address) :
NATIONAL TENANT NETWORK, INC. and LCIJ, INC d/b/a NATIONAL
TENANT NETWORK, INC
188 FRIES MILL ROAD SUITE L-2,
BLACKWOOD, NJ 08012

**AFFIDAVIT OF SERVICE**
(For use by Private Service)

**Attorney:**
Francis Mailman Soumilas, P.C
1600 MARKET STREET Suite 2510
PHILADELPHIA, PA 19103

Cost of Service pursuant to R. 4:4-3(c)
$0.00

**Papers Served:**
Summons and Complaint (Received Dec 16, 2024 at 12:00am EST)

**Service Data:**

| Served Successfully | [X] | Not Served | [ ] | Date | Tue, Dec 17 2024 | Time: | 02:19 PM |
| | | | | | | Attempts: | 1 |

[ ] Delivered a copy to him / her personally

[ ] Left a copy with a competent household
member over 14 years of age residing
therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to
accept service, e.g., management agent,
registered agent, etc.
(indicate name & official title at right)

Name of Person Served and relationship or title
MARLO PAURO AUTHROIZED TO ACCEPT FOR

NATIONAL TENANT NETWORK, INC. and LCIJ, INC d/b/a NATIONAL
TENANT NETWORK, INC

**Description of Person Accepting Service:**

Sex: Female    Age: 30-40    Height: 5'5"    Weight: 125    Skin Color: Caucasian    Hair Color: Black

**Unserved:**

[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] No response on:   Date: _____   Date: _____
               Time: _____   Time: _____
[ ] Other: _____    _____
                         Comments or Remarks

**Server Data:**

Subscribed and Sworn to me this
23 day of Dec 2024

Notary Signature
Name of Notary, commission expiration.   4/1/2026

I, Stephen P. Leoniy, was at the time of service a competent adult and
not having a direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.



Stephen P. Leoniy, 15 Kingsley Avenue, Marlton, NJ 08053, 856-889-0847

DENISE CASCIO
My Commission Expires
NOTARY
PUBLIC
STATE OF NEW JERSEY
April 1, 2026

Revised 9/30/2002, CN 10516-English

Affidavit of Service (9/30/2002)

page 1 of 1